UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SunOpta Grains and Foods Inc., | Court File No. 0:17-cv-01607 (PAM/HB) |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| JNK Tech Inc. d/b/a Salitek; Cherith Agro, Inc. f/k/a JP Agro Trading, Inc.; and Abraham T. "Tim" Kim; | **[JURY TRIAL DEMANDED]** |
| Defendants. | |

Plaintiff SunOpta Grains and Foods Inc., as and for its Amended Complaint against Defendants JNK Tech Inc. d/b/a Salitek; Cherith Agro, Inc. f/k/a JP Agro Trading, Inc.; and Abraham T. "Tim" Kim states and alleges as follows:

## PARTIES

1. Plaintiff SunOpta Grains and Foods Inc. ("SunOpta") is a Minnesota corporation with its principal place of business at 7301 Ohms Lane, Suite 600, Edina, Minnesota 55439. SunOpta is in the business of, among other things, buying and selling soybeans.

2. Upon information and belief, Defendant JNK Tech Inc. d/b/a Salitek ("Salitek") is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois.

3. Upon information and belief, Defendant Cherith Agro, Inc. f/k/a JP Agro Trading, Inc. ("Cherith") is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois. Cherith is in the business of procuring, trading, and delivering soybeans.

4. Upon information and belief, Defendant Abraham T. "Tim" Kim ("Kim") is a natural person residing in Mount Pleasant, Illinois. Upon information and belief, Kim is the

President of both Salitek and Cherith, is an experienced importer, exporter and trader of agricultural commodities, and conducts business through those entities.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over all Defendants because they transact business within the State of Minnesota; Defendants have had a significant quantity of contacts with this state directly related to the claims at issue such that personal jurisdiction would not offend traditional notions of fair play and substantial justice; and Defendants' actions have caused an injury in Minnesota.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to SunOpta's claims occurred in this district.

## FACTUAL ALLEGATIONS

8. In 2016, Kim contacted SunOpta for the purpose of buying soybeans to resell in China. In particular, Kim sought to purchase small soybeans capable of sprouting. Kim entered into negotiations with Michael Todd ("Todd"), a SunOpta sales representative. Their negotiations culminated in a written Sales Confirmation Contract setting forth the terms governing SunOpta's sale of soybeans to Kim.

9. The Sales Confirmation Contract, which was assigned Contract No. ES 4065, memorialized Kim's order to purchase 2015 Crop Small Soybeans for Sprout from SunOpta in 25 Kg bags. The contract further specified that SunOpta would sell Kim 18,371 bushels, or 500 metric tons, of soybeans in 25 loads, via ocean freight, for delivery to Dalian, China, with

shipment occurring between July 2016 and August 2016. The contract also specified a price of $15.00 per bushel, or $551.00 per metric ton, with payment due 30 days from the invoice date. A true and correct copy of the Sales Confirmation Contract is attached hereto as Exhibit "A" and is incorporated herein by reference.

10. Todd executed the Sales Confirmation Contract on behalf of SunOpta and sent it to Kim via email. In the email, Todd thanked Kim for his continued help and inquired as to Kim's plans for future soybean purchases. Upon information and belief, Kim received Todd's email with the attached Sales Confirmation Contract and did not dispute it or object to it.

11. Kim, in his individual capacity and in his capacity as President of both Salitek and Cherith, travelled to Minnesota on numerous occasions over the course of six months to negotiate, consummate, and facilitate the soybean transaction. Specifically, Defendants met with SunOpta at its offices in Edina, Minnesota on at least two occasions to discuss the transaction. Defendants also visited SunOpta's plant in Morehead, Minnesota on multiple occasions to inspect the soybean product and conduct testing on it. Defendants also visited SunOpta's storage vendor in Fridley, Minnesota on multiple occasions to conduct further soybean product inspections and to drop off packaging materials.

12. In July and August 2016, SunOpta caused soybeans to be delivered to Dalian, China in two installments in fulfillment of the parties' contract. SunOpta issued invoices to Kim and his businesses documenting the transactions and requesting payment in accordance with the contract terms. Specifically, SunOpta issued two general invoices to Salitek and two commercial invoices to Cherith, all of which were sent to the same, shared business address.

13. In total, SunOpta sought payment in the amount of $278,451.25, reflecting the agreed-upon price of $15 per bushel plus $2,786.25 in additional, pass-through freight charges.

14. Defendants acknowledged receipt of SunOpta's invoices and did not dispute the amount stated or object to the delivery of the soybeans.

15. The due date for payment on SunOpta's invoices came and went, and Defendants made no payments to SunOpta for the 18,371 bushels of soybeans it delivered to China on Defendants' account. To date, the invoices remain outstanding.

16. SunOpta engaged in numerous conversations with Kim over the course of several months regarding the outstanding invoices, but its attempts to secure payment from Defendants were unsuccessful.

17. The unpaid balance due to SunOpta for the soybeans it sold to Defendants is $278,451.25.

18. SunOpta has performed all conditions necessary to the maintenance of this action.

19. Kim is liable to SunOpta for the soybean purchase either directly or in his capacity as Cherith's alter ego. Likewise, Salitek is liable to SunOpta for the soybean purchase either directly or on a piercing-the-corporate-veil theory.

20. Kim is Cherith. He is Cherith's President and sole shareholder. Kim and his wife Sarah Kim are Cherith's only employees.

21. Kim is also Salitek. He is Salitek's President and sole shareholder. Kim and his wife Sarah Kim are Salitek's only employees.

22. Cherith and Salitek share the same office space, and the same bank. Kim and his wife are the only individuals that have access to Salitek's and Cherith's bank accounts, and Kim's wife signs her own paychecks.

23. Cherith and Salitek are insufficiently capitalized for purposes of their corporate undertaking, and are unable to pay their debts as they become due. Salitek reported a loss in

2016, and both Salitek and Cherith reported a loss in 2017. Salitek did not pay dividends in 2016 or 2017, and Cherith did not pay dividends in 2017.

24. Cherith and Salitek have failed to observe corporate formalities. Cherith and Salitek have failed to maintain corporate records, such as meeting minutes and annual filings. In 2017, Cherith's revenue was used to pay Salitek's employees.

25. Cherith and Salitek are also a façade for Kim's individual dealings. For example, Kim uses Salitek and Cherith to make charitable contributions to his church.

## COUNT I
## ACTION FOR THE PRICE

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

26. The soybeans SunOpta sold to Defendants constitute "goods" under the Uniform Commercial Code ("UCC").

27. Defendants received and accepted the soybeans from SunOpta.

28. Defendants did not pay for the soybeans and did not return the soybeans to SunOpta.

29. Under UCC §§ 2-607 and 2-709, SunOpta is entitled to recover the purchase price for the soybeans from Defendants in the amount of $278,451.25.

## COUNT II
## BREACH OF CONTRACT

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

30. In 2016, SunOpta and Defendants entered into an express, written agreement by which SunOpta agreed to deliver 18,371 bushels of soybeans to Dalian, China on Defendants' behalf and pursuant to agreed-upon terms in exchange for Defendants' payment of $278,451.25.

31. In July and August 2016, SunOpta delivered 18,371 bushels of soybeans to Dalian, China on Defendants' behalf and pursuant to the terms of the parties' agreement.

32. Defendants breached their contractual obligations to SunOpta by failing to pay SunOpta the purchase price for the soybeans.

33. SunOpta has been damaged in the amount of $278,451.25 and is entitled to recover the purchase price of the soybeans from Defendants.

## COUNT III
## BREACH OF IMPLIED-IN-FACT CONTRACT

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

34. In 2016, SunOpta and Defendants engaged in negotiations that culminated in an agreement by which SunOpta would deliver 18,371 bushels of soybeans to Dalian, China on Defendants' behalf and pursuant to agreed-upon terms.

35. Pursuant to the parties' agreement, SunOpta shipped 18,371 bushels of soybeans to Dalian, China in July and August of 2016 and then sent invoices to Defendants seeking payment in the amount of $278,451.25.

36. Defendants acknowledged receipt of the soybeans and the invoices.

37. Defendants did not deny that they were obligated to pay SunOpta for its procurement and delivery of soybeans in the amount stated but failed to pay for other reasons.

38. As a result of Defendants' breach, SunOpta has been damaged in the amount of $278,451.25.

96757833.1 0037999-00076

## COUNT IV
## BREACH OF IMPLIED-AT-LAW CONTRACT

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

39. In July and August 2016, SunOpta conferred a benefit upon Defendants when it caused 18,371 bushels of soybeans to be delivered to Dalian, China, at Defendants' request and pursuant to agreed-upon terms.

40. Defendants accepted delivery of the soybeans and did not reject or return them.

41. Defendants agreed to pay SunOpta $278,451.25 in exchange for delivery of 18,371 bushels of soybeans.

42. To date, Defendants have not paid SunOpta for the soybeans despite repeated demands to do so.

43. Defendants have been unjustly enriched at SunOpta's expense in the amount of $278,451.25. It would be inequitable for Defendants to retain the benefit conferred by SunOpta of delivery of 18,371 bushels of soybeans without paying for them.

## COUNT V
## PROMISSORY ESTOPPEL

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

44. Defendants promised to pay SunOpta for the delivery of soybeans to China pursuant to agreed-upon terms.

45. SunOpta relied on Defendants' promise to pay for the delivery of soybeans.

96757833.1 0037999-00076

46. As a result of the parties negotiations culminating in a written agreement setting forth defined quantity and payment terms, SunOpta's reliance was expected and foreseeable by Defendants.

47. SunOpta relied on Defendants' promise to pay to its detriment. SunOpta delivered 18,371 bushels of soybeans to China in July and August 2016, but to date, Defendants have failed to pay SunOpta as they promised they would.

48. As a result of SunOpta's detrimental reliance on Defendants' promise, SunOpta has been damaged in the amount of $278,451.25.

## COUNT VI
## ACCOUNT STATED

SunOpta restates all of the foregoing paragraphs of this Complaint and further restates and alleges as follows:

49. In July and August 2016, SunOpta delivered soybeans to China on Defendants' account and pursuant to the parties' agreement.

50. SunOpta sent invoices to Defendants reflecting the amount of soybeans delivered and the payment owed, in accordance with the parties' agreed-upon terms.

51. Defendants received SunOpta's invoices and did not object to them or reject them within a reasonable time.

52. In conversations with SunOpta, Defendants acknowledged the debt owed and indicated their intent to pay.

53. Under the circumstances, Defendants are liable to SunOpta for the amount stated on the invoices, namely, $278,451.25.

96757833.1 0037999-00076

## JURY TRIAL DEMAND

54. SunOpta hereby demands a jury trial of all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, SunOpta prays that the Court enter judgment in its favor and against Defendants as follows:

1. Award SunOpta money damages against Defendants, jointly and severally, in the amount of $278,451.25;

2. Award SunOpta its interest, costs, and disbursements; and

3. Grant SunOpta all such other and further relief as the Court deems just and equitable under the circumstances.

**STOEL RIVES LLP**

Dated: April 25, 2018

*s/Margaret E. Dalton*
Eric A. Bartsch (#243723)
Margaret E. Dalton (#387357)
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
Facsimile: (612) 373-8881
eric.bartsch@stoel.com
maggie.dalton@stoel.com

**ATTORNEYS FOR PLAINTIFF
SUNOPTA GRAINS AND FOODS INC.**

96757833.1 0037999-00076